**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JULIAN BEST and PATRICIA CLEFT,

    Plaintiffs,

CIVIL ACTION NO. 3:10-CV-2335

(JUDGE CAPUTO)

ROMEC, INC., DELTA HOMES, INC., JOSEPH DIGREGORIO, RITA MECCA, ANTHONY J. MECCA, GERBER ASSOCIATES, and NATIONAL CITY MORTGAGE CO.

    Defendants,

## MEMORANDUM

Before the Court are Motions to Dismiss filed on behalf of defendants Romec, Inc., Delta Homes, Inc., Joseph DiGregorio, Rita Mecca, Anthony J. Mecca, Gerber Associates, and National City Mortgage Co. This suit arises out of plaintiffs ("Best") purchase of a home in Monroe County, Pennsylvania. Best essentially claims he was sold a bill of goods. He alleges defendants colluded to mislead him about every aspect of the purchase in violation of state and federal laws: from the lot the house was built on, to its design, financing, and value. The Court will address each motion in turn. The motions will be granted in part and denied in part for the reasons stated below.

## BACKGROUND

Best's complaint alleges the following.

Julian Best and Patricia Creft live in Brooklyn, NY. Romec, Inc., is a Pennsylvania corporation owned and controlled by the Anthony and Rita Mecca. Delta Homes, Inc., is a Pennsylvania corporation owned and controlled by DiGregorio. Gerber Associates is a real estate company located in Clark Summit owned by W. Nevin Gerber and employing

George Campbell. National City Mortgage Company is a subsidiary of National City Bank with its principal place of business in Miamisburg, Ohio.

On July 21, 2007, Best went to Delta about constructing a new home and was shown a corner lot in Cantebury Estates, Lot 12 by Delta employee Chuck Hess. That same day, Best purchased a lot from Romec, making a thirteen-thousand dollar ($13,000.00) down payment.

While Best was led to believe he was purchasing Lot 12, he actually bought Lot 13. Best then reviewed the styles and models of the homes Delta constructed. Unimpressed, Best submitted blueprints from a relative's home that DiGregorio told him would be the basis of the home Delta constructed. Specifically, DiGregorio would incorporate the submitted blueprints into the existing model, make changes, and submit the revised blueprints to Best. However, Best never saw the revisions. Delta and DiGregorio then forced Best to use National City and the Meccas to finance the construction of the home.

Before the closing, National City ordered two appraisals of the home. A.C. Read Appraisal appraised the property at four-hundred and thirty thousand dollars ($430,000.00). Gerber Associates appraised the property at four-hundred and seventy thousand dollars ($470,000.00). Gerber, Delta, Romec, and National City conspired with Gerber to inflate the appraisal beyond the actual market value of the property. Gerber agreed in order secure further business. National City then knowingly used Gerber's exaggerated appraisal as the basis of its underwriting of Best's mortgage to rack up higher financing charges. Best was initially told to bring a check for ten thousand dollars ($10,000) to the closing. After it was canceled, he was told to bring a check for forty-five thousand dollars ($45,000.00). At the closing, DiGregorio and a National City employee told him he needed an additional

thirty-three thousand dollars ($33,000.00) in order to get a loan from National City. This forced him to sign a note with the Meccas for that amount. Shortly after the closing, Best went to see the construction and saw the foundation being poured at Lot 13, not Lot 12. He called Delta, but Delta told him that he had purchased Lot 13, not 12. Throughout the construction, Best complained to DiGregorio that he was not following the blueprints, but was ignored. Delta also charged him an additional forty thousand dollars ($40,000.00) to have the basement finished, a cost which should have been in the original purchase price.

In total, Best was charged over five-hundred and sixteen thousand, six-hundred and nine dollars ($516,609.00) for the completed home, far above even its inflated appraisal value. Additionally, DiGregorio and Delta made the following construction errors: the bedrooms and sunroom are smaller than the blueprints; there is no large window in the master bath; the inside steps and front porch were built incorrectly; and the kitchen overhangs the garage. Best hired an independent inspector to evaluate the construction. The inspector found, among other things, that the constructed rooms were smaller than those in the plans, resulting in a "house shrinkage" of approximately 26.54 square feet.

In his complaint, Best brings claims for: breach of contract (counts I and II); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (count III); common law fraud (count IV); unjust enrichment (count V); and violation of the Real Estate Settlement and Procedures Act ("RESPA"). Delta, DiGregorio, Romec, the Meccas, Gerber, and National City then all moved to have the complaint dismissed. The motions have been briefed and are ripe for review.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint,

in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring a complaint to set forth information from which each element of a claim may be inferred). In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256,

263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

**I.    Motion to Dismiss of Delta Homes, DiGregorio, Romec, Anthony Mecca and Rita Mecca (Doc. 5)**

The Court will grant this motion as to the breach of contract claim against Delta and DiGregorio (count I). It will deny the rest of the motion.

**A.    Count One**

In Count I, Best has sued Delta, DiGregorio, Romec, and the Meccas for breach of contract over the purchase of the lot. In Pennsylvania, a person who is not a party to a contract cannot be held liable for a breach by one of the parties to a contract. *Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. 1997) (internal citations omitted).

Delta and DiGregorio argue that they should be dismissed from count I because they were not parties to the contract between Best and Romec for the purchase of the lot. Best does not counter, and the Court will dismiss them.

The Romecs then argue that they should also be dismissed from count one because they cannot be held individually liable for a contract Best made with Romec.

Generally, a breach of contract by a corporation "is the breach of a promise made by the corporation, and not the breach of any promise extended by the corporate officer . . . [thus] only the corporation may ordinarily be held liable for contract damages." *Loeffler v. McShane*, 372 Pa. Super. 442, 539 (1988).  However, courts can pierce the corporate veil if it finds the corporation is a mere sham designed to avoid individual liability.  However, the act of piercing the corporate veil is an extraordinary remedy and will only be employed in exceptional circumstances. *Village at Camelback Property Owners Ass'n Inc. v. Carr*, 371 Pa.Super. 452, 461 (1988). Courts will pierce the corporate veil "whenever justice or public policy require and where rights or innocent parties are not prejudiced nor the theory of corporate entity rendered useless.... Whenever one in control of a corporation uses the corporate assets, to further his or her own personal interests, the fiction [that a corporation is a legal entity separate from its shareholders] may properly be disregarded." *Lynch v. Janson, Civ.A. No. 90-5063*, 1990 WL 188926, at *7 (E.D.Pa. Nov. 28, 1990) (citations omitted); *Carr*, 371 Pa.Super. at 461.

Courts look at several factors to determine whether or not to pierce the corporate veil: 1) whether corporate formalities were observed and corporate records were kept; 2) whether other corporate officers and directors existed other than the shareholder; and 3) whether the dominant shareholder has used the assets of the corporation for his own personal use. *Lynch*, 1990 WL 188926, at *7.  It need not assert that the corporation is being used to perpetrate fraud or a crime, the corporate veil can still be pierced under appropriate circumstances where defendant alleges that it is necessary to avoid injustice.

*Carr*, 371 Pa.Super. at 462.

The Meccas argue that, as a fundamental tenant of corporate law, they are not individually liable for contracts entered by Romec. Best counters that the Court should pierce the corporate veil and hold the Meccas individually liable. Best argues that Romec does not have a separate existence as an individual entity and is solely a conduit for the Meccas' own activities. Alternatively, Best argues the Court should grant him leave to amend his complaint to add these allegations. Given Best's allegations, the Court will allow him to amend his complaint to include the allegations regarding Romec's corporate structure and the Mecca's control over the company.

### B.   Count Two

DiGregorio makes the same argument – that he is not individually liable for contracts entered into by Delta – with respect to Best's breach of contract claim over the construction of the home (count II). DiGregorio additionally claims that he is not an owner of Delta, but only its Treasurer. Best again alleges Delta is a mere shell for DiGregorio's activities and that allowing the corporate form to shield him from liability would be inequitable and unjust. Again, the Court will allow Best to amend the complaint to include the allegations against Delta's corporate structure and DiGregorio's control over it.

### C.   Count Three

Delta, DiGregorio, Romec, and the Meccas next argue the UTPCPL claim (count III) should be dismissed for three reasons: (1) the Meccas and DiGregorio are not liable for contracts between Best and Delta and Romec; (2) prior and contemporaneous discussions regarding the construction are inadmissible under the parol evidence rule because the contract with Delta contains an integration clause; and (3) Best fails to allege personal

7

involvement on the part of DiGregorio and the Meccas. The Court has already addressed (1) and does not agree with (2) and (3). Therefore, it will not dismiss this count.

As to (2), to determine whether or not a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties . . .." *McMinn v. Mammone*, 169 Pa. Super. 1, 4 (1951). An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution. *McGuire v. Schneider*, 368 Pa.Super. 344 (1987), *aff'd*, 368 Pa.Super. 344 (1988). Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract. *See Bardell v. Willis Co.*, 375 Pa. 503 (1953).

The parol evidence rule means, "[w]here the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract.*" Gianni v. Russell & Co.*, 281 Pa. 320 (1924) (citations omitted). One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake. *See Bardell*, 375 Pa. at 506.

Here, the fraud allegations vitiate the integration clause and the parol evidence rule.

Moving to (3), the UTPCPL prohibits any person from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices," 73 P.S. § 201-3, and provides a non-exhaustive list of specific forbidden acts, *Id.* § 201-2(4). The Pennsylvania Supreme Court has instructed that courts "construe [the statute] liberally to effect its object of preventing unfair or deceptive practices." *Creamer v. Monumental Properties Inc.*, 459 Pa. 450 (1974). The statute further makes available a private cause of action for "[a]ny person who purchases or leases goods or services ... and thereby suffers any ascertainable loss ..., as a result of the use or employment by any person of a method, act or practice declared unlawful." 73 P.S. § 201-9.2(a). To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance. *See Weinberg v. Sun Co.*, 565 Pa. 612 (2001).

The Court finds Best has sufficiently alleged the personal involvement of the Meccas and DiGregorio in the events giving rise to the UTPCPL claim. This claim relates to two distinct events: (1) the sale of the lot; (2) the construction of the home. Best alleges that Romec and the Meccas intentionally misled him into thinking he was buying Lot 12 and that he purchased Lot 13 in reliance on these misrepresentations. Best further alleges that he was systematically misled by Delta and DiGregorio about the design of the house, its size, and numerous aspects of its construction, and that he relied on DiGregorio's misrepresentations, believing he was buying a house modeled on the blueprints he had submitted when he was really buying the style of home he had rejected.

### D. Count Four

Delta, DiGregorio, Romec, and the Meccas next argue count IV should be dismissed because Best has not made out the elements of common law fraud. Alternatively, they move for a more definite statement of the fraud claim.

To establish common law fraud, a plaintiff must prove: (1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result. *Rizzo v. Michener*, 401 Pa.Super. 47, 61(1990). Federal Rule of Civil Procedure 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

The Court finds Best has made out the elements of fraud as to each of these defendants and will not require a more definite statement of this claim. Best alleges that the Meccas and Romec intentionally misled him about which lot he was buying, and that based on these representations, he purchased Lot 13 when he believed he was purchasing Lot 12. Best further alleges that DiGregorio and Delta intentionally misled him about incorporating Best's blueprints into the design of the house. Relying on DiGregorio's misrepresentations, Best ended up with a smaller home not designed to his specifications. The Court finds Best has adequately pled common law fraud against these defendants and will not dismiss this claim.

### III. National City Mortgage's Motion to Dismiss (Doc. 17)

The Court will grant National City's motion to dismiss because the RESPA claim is time barred and the UTPCPL and fraud claims against it are conclusory and do not plausibly state claims for relief.

Only one section of RESPA, which deals with kickbacks and unearned fees, creates a private cause of action. 12 U.S.C. § 2607. However, such an action has to be brought within one year of the occurrence of the violation. 12 U.S.C. § 2614. A petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some extraordinary circumstance stood in his way. *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (internal citation omitted).

Here, Best argues that National City conspired with the other defendants to inflate the value of the property by accepting an appraisal from Gerber they knew exceeded the property's fair market value. However, the events described in the complaint ended in November 2007 and Best did not file his complaint until November 2010. Best argues the "equitable tolling" doctrine should apply, but there are no allegations in the complaint as to why he waited so long to bring the claim. Therefore, the Court will not toll the limitations period and will dismiss this claim as time barred.

Additionally, Best's UTPCPL and fraud claims against National City will be dismissed because these allegations do not amount to a plausible claim for relief. Both claims require a plaintiff to show the defendant intentionally misrepresented some fact to induce plaintiff to act, and that plaintiff relied on these misrepresentations to his detriment (see above). Here, Best alleges National City intentionally used Gerber's inflated appraisal in order to make more money on the mortgage. However, Best does not allege any reliance on National City's representations. Best contracted for the lot and the home construction *before* he signed the mortgage. There is also no evidence that National City used Gerber's appraisal in order to induce Best to act, as appraisals are a routine part of the mortgage underwriting process. Therefore, these claims will also be dismissed. Because the Court has already determined it will dismiss Best's three claims against National City, it need not

11

address its other arguments for dismissal.

### III. Gerber's Motion to Dismiss (Doc. 19)

The Court will grant Gerber's motion to dismiss Best's UTPCPL and fraud claims, but not the unjust enrichment claim.

Best's UTPCPL and fraud claims fail to state a claim against Gerber for the same reasons they fail against National City. There can be no plausible suggestion that Best relied on Gerber's allegedly inflated appraisal because the appraisal was done *after* Best had signed contracts with Romec and Delta for the lot and the home construction. National City ordered the appraisal as part of its underwriting procedures, and Gerber's appraisal played no part in Best's decisions regarding the home he purchased.

"Unjust enrichment" is essentially an equitable doctrine. *Styer v. Hugo*, 422 Pa.Super. 262 (1993). The elements of unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; (3) and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Wolf v. Wolf*, 356 Pa.Super. 365 (1986), *overruled on other grounds*, *Van Buskirk v. Van Buskirk*, 527 Pa. 218 (1991). The most important factor to be considered in applying the doctrine is whether the enrichment of the defendant is unjust. *Styer*, 422 Pa. Super. at 267. Where unjust enrichment is found, the law implies a contract, referred to as either a quasi contract or a contract implied in law, which requires that the defendant pay to plaintiff the value of the benefit conferred. In short, the defendant makes restitution to the plaintiff in quantum meruit. *Chesney v. Stevens*, 435 Pa.Super. 71 (1994).

Here, Best alleges he paid for an inflated appraisal that led to him having a higher mortgage and paying more in interest and financing fees, and that Gerber purposely

exaggerated the mortgage to secure more business from the other defendants. The Court sees no reason why Gerber should keep the appraisal fee if these allegations are ultimately substantiated. Therefore, it will not dismiss Best's unjust enrichment claim.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss (Doc. 5, 17, and 19) will be granted in part and denied in part as follows. National City's motion to dismiss will be granted. Gerber's motion to dismiss will be granted as to Best's UTPCPL and fraud claims, but not his unjust enrichment claim. The motion to dismiss of Delta, DiGregorio, Romec, and the Meccas will only be granted as to count I against Delta and DiGregorio. The rest of their motion will be denied. Best will be given twenty-one days (21) to amend his complaint to add the allegations regarding Romec's and Delta's corporate structures.

An appropriate order follows.


7/28/11                                          /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JULIAN BEST and PATRICIA CLEFT,

   Plaintiffs,

CIVIL ACTION NO. 3:10-CV-2335

(JUDGE CAPUTO)

ROMEC, INC., DELTA HOMES, INC.,
JOSEPH DIGREGORIO, RITA
MECCA, ANTHONY J. MECCA,
GERBER ASSOCIATES, and
NATIONAL CITY MORTGAGE CO.

   Defendants,

## ORDER

**NOW**, this ___28th___ day of July, 2011, **IT IS HEREBY ORDERED** that defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part as follows:

(1) Romec's, the Mecca's, Delta's, and DiGregorio's motion to dismiss is **GRANTED** as to plaintiffs' breach of contract claim against Delta and DiGregorio in count I. The rest of the motion is **DENIED**.

(2) Plaintiffs have **twenty-one days (21)** to amend their complaint to add their allegations regarding Romec's and Delta's corporate structure.

(2) National City Mortgage's motion to dismiss is **GRANTED**.

(3) Gerber Associates' motion to dismiss is **GRANTED** as to plaintiffs' UTPCPL and fraud claims. It is **DENIED** as to plaintiffs' unjust enrichment claim.

                                                   /s/ A. Richard Caputo
                                                   A. Richard Caputo
                                                   United States District Judge